UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KELLY HARRIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC, a Delaware limited liability company,<br><br>Defendant. | C20-257 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Defendant General Motors' ("GM") Motion to Dismiss Class Action Complaint and to Strike Class Allegations, docket no. 12. Having reviewed all papers filed in support of and in opposition to the motion, the Court enters the following order.

**Background**

Plaintiff Kelly Harris owned a used 2012 Chevrolet Silverado, which he received in 2012 from his former employer as part of a separation agreement. Complaint, docket no. 1 at ¶ 25. Harris' vehicle was equipped with a Generation IV 5.3 liter V8 Vortec 5300 LC9 engine (the "defective engine"). *Id.* Harris' vehicle soon began to experience engine problems like fouled spark plugs which caused engine misfiring, and as a result, in

ORDER - 1

2014, Harris' vehicle needed a spark plug replacement. *Id.* at ¶¶ 27-28. In 2015, Harris became aware that oil consumption issues were the cause of the spark plug problems with his vehicle. *Id.* at ¶ 28. On an unspecified date, Harris took his vehicle into a Chevrolet dealership to fix the issues with his vehicle's spark plug. *Id*. at ¶ 29. Harris was informed that the vehicle was low on oil, had fouled spark plugs, and that the cause of the fouled spark plugs was excessive oil consumption due to an issue with the piston rings. *Id*. The dealership also told Harris that he would need to have his engine replaced. *Id.*

Harris alleges that the primary cause of the alleged excessive oil consumption (the "Oil Consumption Defect") is that the piston rings in the defective engines do not maintain sufficient tension to prevent oil from being consumed in the combustion chamber, which then fouls spark plugs and creates harmful carbon buildup in the pistons and cylinders. *Id.* at ¶¶ 7, 41. Harris further alleges that GM has been aware of the Oil Consumption Defect but failed to publicly disclose it. *Id.* at ¶¶ 75-81. In support of this allegation, Harris cites GM's subsequent redesign of the defective engine (*id.* at ¶ 75), public consumer complaints regarding oil consumption problems in the defective engines (*id.* at ¶ 76), Old[1] GM's knowledge (*id.* at ¶ 77), and technical service bulletins addressing the oil consumption problem (*id.* at ¶¶ 79-80).

Harris alleges that the Oil Consumption Defect presents an unreasonable safety risk "to the driver, other passengers of the Class Vehicles, and the public" because the

---

[1] Old GM refers to GM prior to its 2009 bankruptcy. Old GM first began manufacturing and equipping vehicles with the defective engines. Complaint, docket no. 1 at ¶¶ 33-37. On June 8, 2009, Old GM filed for Chapter 11, and Defendant GM acquired the assets of Old GM and emerged from bankruptcy on July 10, 2009. *Id.* at ¶¶ 38-39.

ORDER - 2

Defect could cause the engine to catch fire and because it could cause an accident or leave drivers and passengers stranded in a variety of unsafe situations. *Id.* at ¶¶ 70-74. Harris alleges that he "would not have purchased" his vehicle or "would have paid less" for it had the alleged oil consumption defect been disclosed. *Id*. at ¶ 180.

On behalf of a nationwide class,[2] Harris brings claims for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("Count 1"). *Id.* at ¶¶ 153-167. On behalf of a Washington class,[3] Harris brings claims for violations of the Washington Consumer Protection Act ("CPA"), RCW § 19.86.010, *et seq.* ("Count 2"), breach of express warranty, RCW § 62A.2-313 and 62A.2A-210 ("Count 3"), fraudulent omission ("Count 4"), and unjust enrichment ("Count 5"). *Id*. at ¶¶ 168-210. Harris seeks injunctive relief, as well as costs, restitution, pre and post-judgment interest, and damages, including punitive damages. *Id.* at 67 (Request for Relief).[4]

**Discussion**

**I.     Legal Standards**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and

---

[2] The nationwide class is defined as "[a]ll current and former owners or lessees of a Class Vehicle . . . that was purchased in the United States." Complaint, docket no. 1 at ¶ 143. Class vehicles are defined as the following: 2010–2014 Chevrolet Avalanche; 2010–2013 Chevrolet Silverado; 2010–2014 Chevrolet Suburban; 2010–2014 Chevrolet Tahoe; 2010–2013 GMC Sierra; 2010–2014 GMC Yukon; and 2010–2014 GMC Yukon XL. *Id.* at ¶ 2.

[3] The Washington class is defined as "[a]ll current and former owners or lessees of a Class Vehicle . . . that was purchased or leased in the State of Washington." Complaint, docket no. 1 at ¶ 144.

[4] Harris originally asserted his claims in *Sloan et al. v. General Motors LLC,* 16-cv-07244-EMC (N.D. Cal.). The *Sloan* court dismissed Harris' claims on jurisdictional grounds pursuant to *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,* 137 S. Ct. 1773 (2017). *See Sloan v. Gen. Motors LLC*, 438 F. Supp. 3d 1017 (N.D. Cal. 2020).

ORDER - 3

contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. Id. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558. A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief. *Twombly*, 550 U.S. at 570. If the Court considers matters outside the complaint, it must convert the motion into one for summary judgment. Fed. R. Civ. P. 12(d). If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Claims sounding in fraud, including fraudulent omission and statutory consumer protection claims, must also meet Rule 9(b)'s heightened pleading standard. The circumstances constituting fraud must be pleaded with particularity, but state of mind, e.g., malice, intent, knowledge, may be alleged in general terms. Fed. R. Civ. P. 9(b).

**II.     Express Warranty Claim (Count 3)**

Harris pleads a design defect inherent in the defective engines. *See* Complaint, docket no. 1 at ¶ 75 (alleging that "design flaws caus[e] excessive oil consumption in the

ORDER - 4

Class Vehicles."); ¶ 163 (alleging that the Generation IV Vortec 5300 Engines "are designed so as to prematurely consume an abnormally large amount of oil"); ¶ 164 (alleging GM's failure to "disclose the defective design").  Harris alleges that GM breached its express warranty that it would cover repairs to correct any vehicle defect "related to materials or workmanship during the warranty period."  *Id.* at ¶ 184.

Courts interpreting language in similar warranties find that it only covers manufacturing warranties.  *See Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *8 & n.5 (N.D. Cal. Aug. 1, 2017) (citing cases from courts in the 3rd, 6th, 7th, 8th and 9th Circuits analyzing similar warranty language and concluding that "the overwhelming weight of state law authority holds that design defects are not covered under [GM's Limited Warranty]").  The Court concludes that GM's limited warranty does not cover the alleged design defect.

Harris also does not allege that his issues with the defective engine occurred during the limited warranty period.  Complaint, docket no. 1 at ¶ 29.  Harris fails to respond to this deficiency in his Opposition, and therefore appears to have waived it.  *Robinson v. WMC Mortg. Corp.*, 649 Fed. Appx. 636, 638 (9th Cir. 2016) (waiver of argument by failing to raise it in response to motion to dismiss).  Harris' express warranty claim is therefore DISMISSED with prejudice.[5]

---

[5] The Court dismisses the claims based on express warranty with prejudice because the claims fail as a matter of law and amendment to the complaint would likely be futile.  *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014).

ORDER - 5

### III.  Magnuson-Moss Warranty Act ("MMWA") Claim (Count 1)

Harris bases his MMWA claim on the same theory as his express warranty claim. Compl., docket no. 1 at ¶¶ 153-67. Because Harris does not plead a viable express warranty claim, his MMWA claim also fails. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("[C]laims under the Magnuson–Moss Act stand or fall with . . . express and implied warranty claims under state law."). Harris' Magnuson-Moss Warranty Act claim is therefore DISMISSED with prejudice.

### IV.  Fraudulent Omission Claim (Count 4) and Washington Product Liability Act ("WPLA") Preemption

GM contends that Harris' fraudulent concealment claim is preempted by the WPLA, RCW 7.72 *et seq.* In response, Harris contends that his fraudulent concealment claim is not preempted by the WPLA because it is based on a fraud theory and because he alleges economic damages based on contract. *See* Complaint, docket no. 1 at ¶¶ 200-02 (alleging that Harris and class members "overpaid" for the Class Vehicles and "would have paid less for the Class Vehicles" if they had known about the Oil Consumption Defect).

The WPLA provides the "exclusive" cause of action for a broad scope of "product-related harms" and "supplants previously existing common law remedies." *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 409 (2012); *Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 854, 860 (1989). The WPLA includes claims related to "concealment" but excludes claims based on fraud or those seeking economic damages. RCW § 7.72.010(4), (6).

Harris' fraudulent concealment claim attempts to force a square peg into a round hole. While Harris characterizes GM's concealment of the Oil Consumption Defect as fraud, the heart of Harris' claims arises out of tort,[6] not contract. Harris' claims relate to exposure to a dangerous product condition that poses an unreasonable risk of harm.[7] *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 354 (1992). *See, e.g.*, Complaint, docket no. 1 at ¶ 14 (alleging that the defect puts occupants "at risk" and may strand vehicles in "hazardous" and "dangerous" conditions and locations); ¶ 64 (alleging that warnings regarding defect "would do nothing to prevent the full scope of the harms caused by the Oil consumption defect" including "hazardous engine misfire and engine shutdown events"); ¶ 70 (alleging that defect may "present dangerous safety hazards to the driver, other passengers of the Class Vehicles, and the public"); ¶ 71 (alleging that the defect will cause engines to overheat, potentially catch fire, and "[s]omeone could be burned"); ¶ 74 (alleging that low oil conditions caused by defect present an unreasonable safety risk).

---

[6] Washington courts employ either the "sudden and dangerous" test or the "evaluative approach" to determine whether a harm is economic and not actionable under the WPLA or sounds in tort and is thus remedial under the WPLA. *Wash. Water Power Co. v. Graybar Elec. Co.*, 112 Wn.2d 847, 866 (1989). Under the "sudden and dangerous" test, the harm is remediable under the WPLA if the product failure "is the result of a sudden and dangerous event." *Id.* Under the evaluative approach, which applies here, a product user need not suffer a sudden and dangerous event but must show that the alleged defect exposed plaintiff, through the dangerous product, to an unreasonable risk of harm to himself or his property. *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wn.2d 334, 354 (1992). The Court then determines "whether the safety-insurance policy of tort law or the expectation-bargain protection policy of contract law is most applicable to the claim in question." *Id.* at 351-52. In this case, tort law controls the claim in question. *See* Complaint, docket no. 1 at ¶¶ 70-74.

[7] Accepting Harris' contention that the Oil Consumption Defect drove down the value of his vehicle, that diminution was likely due to the safety risk the Defect posed.

ORDER - 7

Harris' claim is essentially that GM knew about the Oil Consumption Defect, concealed that information from Harris and other putative class members, and that they suffered damages as a result.[8]  WPLA provides the exclusive remedy for such a claim. *See Cashatt v. Ford Motor Co.*, 2020 WL 1987077, at *2-3 (W.D. Wash. Apr. 27, 2020) (plaintiffs' fraud claim "ultimately based on concealment of a product defect" for which the WPLA "is the exclusive remedy" where "Ford knew about the defect with its vehicles but omitted/concealed that information from Plaintiffs and others, leading them to suffer damages").

Harris' fraudulent concealment claim is DISMISSED without prejudice to replead as a WPLA claim.

## V.     Washington Consumer Protection Act ("CPA") Claim (Count 2)

To assert a CPA claim, Harris must allege deceptive advertising, causation, and injury with specificity.  *Fid. Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003).  Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead sufficient, non-conclusory facts to support a CPA claim.  *Universal Life Church Monastery Storehouse v. King*, 2019 WL 2524993, at *3 (W.D. Wash. June 19, 2019).  Harris fails to allege that he relied on any particular GM statement or advertisement when he obtained his GM vehicle for consideration in his separation agreement with his former employer.  Harris' conclusory allegations that GM generally misrepresented the quality

---

[8] Harris' citation to *Hoefs v. Sig Sauer Inc.*, 2020 WL 3488155, at *2 (W.D. Wash. June 26, 2020) is misplaced.  In *Hoefs*, the Court allowed the claims *not based* "in some way from the allegedly defective design, manufacture, and warnings" of Sig Sauer's P320 pistol (i.e. allegations of Sig Sauer's fraud, fraudulent concealment, and CPA claims) to proceed as not preempted by the WPLA.  Here, Harris' fraudulent omission claim is based on the alleged design defect.

ORDER - 8

of its vehicles in brochures and other marketing materials do not pass muster under Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Fid. Mortg. Corp.*, 213 F.R.D. at 575.

A plaintiff seeking injunctive relief under the CPA must satisfy the constitutional standing requirements to sue for such relief, including allegation of a future injury.  *Grant v. Unigard Indem. Co.*, 2014 WL 12028484, at *5 (W.D. Wash. July 29, 2014).  A plaintiff who <u>lacks</u> the prospect of individual future injury may not seek injunctive relief under the CPA.  *Id.* (citing *Hockley v. Hargitt*, 82 Wn.2d 337, 350 (1973)).  Harris alleges that he will suffer future injury because "GM never disclosed the Oil Consumption Defect and continues to actively conceal it."  Opposition, docket no. 27 at 9.  Harris is aware of the Oil Consumption Defect and its primary cause.  Any future concealment of the Defect by GM cannot cause further injury to Harris.  Harris therefore has not alleged a future injury.  Harris' CPA claim is DISMISSED without prejudice.[9]

### VI.     <u>Unjust Enrichment Claim (Count 5)</u>

A party seeking to recover under a theory of unjust enrichment must show that the plaintiff conferred a benefit upon the defendant.  *Austin v. Ettl*, 171 Wn. App. 82, 92 (2012); *Allyis, Inc., v. Schroder*, 197 Wn. App. 1082, at *4 (Feb. 27, 2017).  Harris does not dispute that he neither purchased nor leased his vehicle, and he does not otherwise allege that he conferred a benefit upon GM.  Instead, Harris responds by stating that courts in Washington have no such requirement.  Harris is mistaken.  Washington law requires a showing of "a benefit conferred upon the defendant by the plaintiff."  *Young v.*

---

[9] Because Harris does not satisfy the constitutional standing requirements, the injunctive relief portion of the CPA claim is dismissed <u>with</u> prejudice.

ORDER - 9

*Young*, 146 Wn.2d 477, 484 (2008) (citing *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 160 (1991)). Harris' Unjust Enrichment Claim is DISMISSED with prejudice.

### VII. Class Certification Allegations

Having dismissed Harris' underlying claims, GM's Motion to Strike Class Allegations is therefore STRICKEN as moot.

### Conclusion

For the foregoing reasons, the Court ORDERS:

(1) Defendant General Motors' Motion to Dismiss, docket no. 12, is GRANTED as follows: Count 1 (Magnuson-Moss Warranty Act claim), Count 2 (injunctive relief portion of CPA claim only), Count 3 (breach of express warranty claim), and Count 5 (unjust enrichment claim) are dismissed with prejudice. Count 2 (CPA claim, except the injunctive relief portion) and Count 4 (fraudulent omission claim) are dismissed without prejudice.

(2) Plaintiff shall file any amended complaint within ninety (90) days from the date of this Order.

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 2nd day of September, 2020.

Thomas S. Zilly
United States District Judge